2013 UT App 36

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF T.O., C.O. ,A.O., AND H.O.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

E.O.,

*Appellant,*

*v.*

STATE OF UTAH,

*Appellee.*

Per Curiam Decision
No. 20120964-CA
Filed February 14, 2013

Third District Juvenile, Salt Lake Department
The Honorable Andrew A. Valdez
No. 1034953

Brent Salazar-Hall, Attorney for Appellant
John E. Swallow and John M. Peterson, Attorneys for Appellee
Martha Pierce, Guardian Ad Litem

Before JUDGES DAVIS, MCHUGH, and VOROS.

PER CURIAM:

¶1      E.O. (Mother) appeals the termination of her parental rights. Mother challenges the sufficiency of the evidence to support the juvenile court's decision on the grounds for termination and the best interests of the children. Mother also challenges the juvenile court's finding that Mother's testimony at the termination trial was not credible. We affirm.

¶2     "[I]n order to overturn the juvenile court's decision [to terminate parental rights], the result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (citation and internal quotation marks omitted). We "review the juvenile court's factual findings based upon the clearly erroneous standard." *In re E.R.*, 2001 UT App 66, ¶ 11, 21 P.3d 680. A finding of fact is clearly erroneous when, in light of the evidence supporting the finding, it is against the clear weight of the evidence. *See id.* Therefore, "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *In re B.R.*, 2007 UT 82, ¶ 12.

¶3     The juvenile court found that Mother was not a credible witness. We afford the juvenile court's decisions deference "based upon not only the court's opportunity to judge credibility first-hand, but also based on the juvenile court judges' special training, experience and interest in this field." *In re E.R.*, 2001 UT App 66, ¶ 11 (citations and internal quotation marks omitted); *see also In re Z.D.*, 2006 UT 54, ¶ 52, 147 P.3d 401 (Wilkins, J., concurring) ("It is usually enough to say, in findings, that the trial judge does not find the witness or the evidence presented to be believable, and to append a few words indicating the most obvious reason."). In support of its credibility determination, the juvenile court found that Mother "blamed everyone but herself for the problems in her home," specifically finding that Mother's claim that she was not aware of the sexual abuse of S.O. until April 2011 was not credible. The juvenile court also noted other specific aspects of Mother's testimony that the court found were not credible. Furthermore, the juvenile court assessed the testimony of S.O. to be more credible than Mother's testimony. We defer to the advantaged position of the juvenile court to assess and weigh credibility and conclude that the juvenile court's credibility determination is adequately supported.

¶4    In challenging the sufficiency of the evidence to support the grounds for termination, Mother claims that the juvenile court did not give appropriate weight to her recent efforts to improve her ability to parent.

> [T]he weight which a juvenile court must give any present ability evidence is necessarily dependent on the amount of time during which the parent displayed an unwillingness or inability to improve his or her conduct and on any destructive effect the parent's past conduct or the parent's delay in rectifying the conduct has had on the parent's ability to resume a parent-child relationship with the child. Thus, although the court has a duty to look forward—i.e., to look at the parent's present ability and the likelihood that the parent will be able to resume parenting within a reasonable time—the court must consider such evidence in light of the parent's past conduct and its debilitating effect on the parent-child relationship. That is, if a parent has demonstrated some improvement in parenting ability but not a strong likelihood that the parent can provide a proper home for the child in the very near future, after a long period of separation, a history of problems and failure to remedy, and deterioration of the relationship between the child and parent, this court should not overturn a court's order terminating parental rights.

*In re B.R.*, 2007 UT 82, ¶ 13 (citation and internal quotation marks omitted).

¶5    The record demonstrates that the juvenile court gave appropriate weight to Mother's present parenting ability, including the evidence that Mother conceded she was not in a position to regain custody at the time of the termination trial, although the children had been in state custody for over two years and Mother

had been provided numerous services. The juvenile court found that Mother was "very articulate in reciting good parenting practices, however she has been unable to implement good parenting practices for a decade." She had recently completed an educational program and become employed, but she did not have adequate income to support herself and her children. She lived in an apartment with two other persons, which she conceded was not appropriate housing for the children. She estimated that she would not be in a position to regain custody for up to an additional two years.

¶6     In order to find grounds for termination of parental rights, a juvenile court must conclude that one of the grounds enumerated in Utah Code section 78A-6-507 exists. *See* Utah Code Ann. § 78A-6-507 (LexisNexis 2012) (stating that the court may terminate parental rights if the court finds any one of the enumerated grounds). Mother contends that the juvenile court erred in light of evidence that Mother claimed to lack knowledge of the sexual abuse of S.O.; she divorced the father, who was the alleged abuser; she made progress on the child and family plan; and she was in therapy, obtained employment, and completed some schooling. We conclude that the evidence was sufficient to support more than one of the grounds for termination.

¶7     The evidence demonstrated that despite the diligent efforts of the Division of Child and Family Services to provide services to Mother, she "substantially neglected, willfully refused, or [had] been unable or unwilling to remedy the circumstances that cause[d] the children to be in an out-of-home placement," had "been unable or unwilling to remedy the circumstances that cause the child to be in an out-of-home placement," and "there is a substantial likelihood that [she] will not be capable of exercising proper and effective parental care in the near future." *Id.* § 78A-6-507(1)(d). Mother testified that she believed that she would not be in a position to regain custody for up to an additional two years. Similarly, the evidence amply supports the juvenile court's finding that Mother had experienced a failure of parental

adjustment because she had been unable within a reasonable time to substantially correct the conduct or conditions which led to her children's placement outside of the home. *See id*. § 78A-6-507(1)(e); *see also id*. § 78A-6-509(1) (b) (requiring the juvenile court to consider the efforts the parent had made to adjust his or her circumstances, conduct, or conditions to make it in the children's best interest to return home after a reasonable length of time).

¶8     Mother's challenge to the best interests determination is without merit. Mother claims that the juvenile court erred "in light of the evidence presented regarding the mother's love for her children, the children's enjoyment with visitation, [her] continued support of gifts to the children, and the evidence regarding [her] progress towards an increased earning potential." This argument does not focus on the interests of the children in achieving stability. The evidence demonstrated that the children's needs, including their special educational and therapeutic needs, were being met by the grandparents, who wish to adopt them. Mother does not challenge any factual finding regarding the appropriateness of the grandparents' home as an adoptive placement. Instead, Mother argued that her parental rights should not be terminated and that the children should remain in a permanent guardianship with the grandparents until an unspecified future date when she will have completed further education and have become employed with a sufficient income. The juvenile court's determination that it was in the children's best interest to allow them to be adopted into a home where they have stability and structure and where their needs will be met is amply supported.

¶9     Because "a foundation for the court's decision exists in the evidence," we affirm the juvenile court's decision terminating parental rights.

————————